**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Kevin DOOLIN, Appellee.**

Superior Court of Pennsylvania.

Argued April 27, 2011.

Filed June 27, 2011.

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth.

Lee M. Rothman, Pittsburgh, for appellee.

BEFORE: STEVENS, P.J., GANTMAN, and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.

Appellant, the Commonwealth of Pennsylvania, appeals from the order dismissing charges against Appellee, Kevin Doolin (Doolin). After careful review, we reverse.

The trial court summarized the relevant factual and procedural history.

[Appellee], Kevin Doolin, [was] charged with the criminal homicide of Albert Kolano, on March 12, 2009, in the parking lot of the Longview Lounge. On March 1, 2010, the Assistant District Attorney assigned to the prosecution of Kevin Doolin, Lisa Pellegrini, received information from the Attorney General's Office ("AG") concerning the death of Kolano. Ms. Pellegrini learned that the AG had begun an investigation of Richard Speciale, a member of the Pagan Motorcycle Club ("Pagan"). The AG's investigation included the use of a confidential informant, later revealed to be Ronald Petrichko, who is a member of

* Retired Senior Judge assigned to the Superior Court.

the Pagans. In December of 2009, Petrichko informed the AG that he had information regarding Kolano's murder.

On March 8, 2010, Ms. Pellegrini disclosed the existence of the witness and the potentially exculpatory information to Doolin's counsel, Lee Rothman. At that point in time, the District Attorney's Office was only generally aware of the information because the AG refused to supply the witness's name or provide any access. Therefore, the District Attorney's Office was unaware of Petrichko's identity, location, or the exact nature of the information he had revealed to the AG.

The District Attorney's Office learned Petrichko's identity on March 17, 2010. On that date, liaisons from the AG arranged for an interview between detectives from the Allegheny County homicide unit and Petrichko. The detectives were informed that Petrichko retained the services of Donna McClelland as counsel. Ms. McClelland requested immunity for Petrichko before she would permit him to make any statements. The District Attorney's Office refused to provide immunity. Petrichko remained silent and refused to be questioned.

On March 18, 2010, Doolin filed a motion requesting a pretrial determination of whether Petrichko would have a Fifth Amendment [1] right against self-incrimination in the event he [was] called to testify. Doolin also filed a motion to compel the release of oral and written statements Petrichko made to AG officers during their investigation. A hearing on those motions was held before [the trial court] on March 19,

2010. [The trial court] issued an order requiring the AG to disclose all written reports regarding statements made by Petrichko; if no reports existed, the order directed their generation. An order was also issued requiring the appearance of all relevant parties to discuss the issue of deciding whether Petrichko had a Fifth Amendment right to remain silent. That hearing was held on April 6, 2010.

At the conclusion of the April 6 hearing, [the trial court] ordered Mr. Rothman to submit legal authority permitting a trial court to determine prior to trial, whether a witness has a Fifth Amendment right to remain silent. On May 5, 2010, the [trial court] ordered a hearing to be held in chambers, outside the presence of the Commonwealth. Present in chambers were Ms. McClelland, Mr. Rothman, and Petrichko. During this hearing, Ms. McClelland made an offer of proof as to what information Petrichko would reveal on the stand. [The trial court] made the determination that Petrichko had a valid Fifth Amendment right against self-incrimination because his testimony would possibly subject him to a charge of conspiracy to commit simple assault. Ms. McClelland stated on the record that she agreed with that conclusion, but also expressed concern that Petrichko could be subject to charges of aggravated assault, felony murder, accomplice to murder, or a co-conspirator to any or all of those charges. Mr. Rothman asserted that any Fifth Amendment right was illusory. Ms. Pellegrini further commented that

---

1. The Fifth Amendment states, in relevant part: "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. The Fifth Amendment privilege applies to the states through the Fourteenth Amendment. *Malloy* *v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Pennsylvania Constitution contains a similar provision, as do Pennsylvania statutes. *See* Pa. Const. Art. I, § 9; 42 Pa.C.S. § 5941(a).

she had individually met with Ms. McClelland and Petrichko after the private in-chambers hearing. Ms. McClelland gave an oral offer of proof, which encompassed an apparent conspiracy by several Pagans to commit an assault that resulted in Kolano's death. Ms. McClelland confirmed that Petrichko will appear at trial to testify, but will invoke his Fifth Amendment right to silence.

Trial Court Opinion and Order, 6/8/2010, at 1–3 (footnote omitted).

On May 13, 2010, Doolin filed a Motion to Dismiss/Motion for Use Immunity for Witness, arguing that "due process may require granting immunity to defense witnesses to safeguard [Doolin's] right to present essential exculpatory evidence and his right to compulsory process." Motion to Dismiss/Motion for Use Immunity for Witness, 5/13/2010, at ¶ 10. After hearing argument on this issue, on June 8, 2010, the trial court granted Doolin's motion and dismissed the charges against him.

On the same day, the Commonwealth filed its notice of appeal.[2] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925. The Commonwealth presents two issues for our review:

    I. Whether the trial court abused its discretion in finding that the proffered defense witness, Petrichko, had a Fifth Amendment privilege not to testify in this case?

    II. Whether the trial court abused its discretion in finding [that Doolin] would

be denied a fair trial if Petrichko could not testify, and in dismissing the charges because the Commonwealth refused to grant the witness immunity? Commonwealth's Brief at 4.

██ We first address whether the trial court abused its discretion in finding that Petrichko had a Fifth Amendment privilege not to testify in this case. After an *in camera* hearing outside the presence of the Commonwealth, the trial court concluded that Petrichko's testimony "would possibly subject him to a charge of conspiracy to commit simple assault." Trial Court Opinion, 7/12/2010, at 2.[3] The Commonwealth contends, however, that "the [trial] court could have required [Petrichko] to testify on [Doolin's] behalf and limit the testimony to observations of the conduct of [Doolin] and any other persons involved in the altercation." Commonwealth's Brief at 11. Petrichko "could have asserted the privilege then the [trial] court could have limited the questions accordingly." *Id.* at 12. We disagree.

██ "It is clear that under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor. However, this right is qualified to the extent of existing testimonial privileges of witnesses, including the privilege against self incrimination." *Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d 624, 627 (1983) (citations omitted).

██ "There is no formula for determining when and how the Fifth Amendment

---

**2.** By granting Doolin's motion to dismiss, the trial court's order disposes of all charges made by the Commonwealth and serves to put the litigants out of court, thus making the order final. *Commonwealth v. Anderson,* 428 Pa.Super. 92, 630 A.2d 47, 49 n. 9 (1993) (citations omitted); Pa.R.A.P. 341(b). As a final order, this Court has jurisdiction to entertain the Commonwealth's appeal, and no

certification pursuant to Pa.R.A.P. 311(d) is necessary.

**3.** As previously noted, Petrichko's attorney stated on the record that she also believed that Petrichko could be subject to charges of aggravated assault, felony murder, accomplice to murder, or a co-conspirator to any or all of those charges. N.T., 5/5/2010, at 12.

privilege can be asserted (nor do we think one should be created)." *Commonwealth v. Kirwan*, 847 A.2d 61, 65 (Pa.Super.2004).

> We are confident that trial courts can draw on their wealth of experience and fashion procedures appropriate to the practicalities of the case and that will allow the judge to make a sufficiently informed decision. We are likewise confident that lower courts will create a record sufficient to demonstrate the propriety of permitting or denying the privilege at the same time as preserving any Fifth Amendment right.

*Commonwealth v. Treat*, 848 A.2d 147, 148 (Pa.Super.2004).

Instantly, the trial court conducted an *in camera* hearing outside the presence of the Commonwealth. Additionally, all parties entered into a stipulation regarding Petrichko's testimony, which the trial court accepted, creating a sufficient record for the trial court to make a determination.

■ Thus, the crux of the Commonwealth's issue is that the trial court granted Petrichko a blanket privilege, rather than just the ability to assert his privilege for each question asked. Commonwealth's Brief at 12–13. We acknowledge that "[a] blanket privilege generally is not permitted." *Kirwan*, 847 A.2d at 65. Alternatively, "a witness should not be placed on the stand for the purpose of having him exercise his [Fifth Amendment] privilege before the jury." *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865, 867 (1971).

■ Instantly, the Commonwealth asserts that Doolin "could have extracted significant exculpatory details to further [Doolin's] defense without ever requiring Petrichko to implicate himself." Commonwealth's Brief at 12. "However, for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency." *Commonwealth v. Carrera*, 424 Pa. 551, 227 A.2d 627, 629 (1967) (emphasis in original) (superseded by statute on other grounds). Under the present circumstances, we cannot conclude that the trial court abused its discretion by granting Petrichko a blanket Fifth Amendment privilege in this case.

Because we have concluded that the trial court did not err in granting Petrichko a Fifth Amendment privilege, we move on to consider whether the trial court subsequently abused its discretion by dismissing the charges against Doolin. In support of dismissing the charges, the trial court offered the following reasoning:

> In light of the above, [the trial court] is reluctant to grant judicial immunity as it is not satisfied that it has this authority, but the circumstances as set forth are so fundamentally unjust as to require granting some relief to [Doolin] and [the trial court] is satisfied that, although this appears to be a case of first impression, a dismissal of the charges will bring about the proper result.

Trial Court Opinion, 6/8/2010, at 5.

■■ The trial court's conclusion that it was not authorized under Pennsylvania law to grant immunity was correct.[4] How-

---

4. The statute governing witness immunity provides, in relevant part:

    (a) General rule.—Immunity orders shall be available under this section in all proceedings before:

    (1) Courts.
    (2) Grand juries.
    (3) Investigating grand juries.
    (4) The minor judiciary or coroners.

ever, the trial court erred in dismissing the charges against Doolin by relying on *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980), to support the dismissal. The decision to grant immunity to a witness rests solely with the prosecution, and should not be disturbed in any way by a trial court.

■ It is well settled that "[t]he decision to grant a pretrial motion to dismiss a criminal [charge] is vested in the sound discretion of the trial court and may be overturned only upon a showing of abuse of discretion or error of law." *Commonwealth v. King*, 932 A.2d 948, 950–51 (Pa.Super.2007) (citations omitted).

■ "Under the Pennsylvania statute the decision to seek a grant of immunity in any individual case rests within the judgment of the prosecutor. It is up to the executive branch of government to decide when and to whom immunity will be granted." *Commonwealth v. Johnson*, 507 Pa. 27, 487 A.2d 1320, 1322 (1985). Furthermore, "as this section makes clear, courts have no power to grant immunity except on request of the prosecutor." *Commonwealth v. Hall*, 867 A.2d 619, 634 (Pa.Super.2005).

In dismissing the charges against Doolin, however, the trial court, adopted the rationale offered by the Third Circuit in *Government of the Virgin Islands v. Smith, supra,* to support its conclusion that Doolin would have been denied his right to a fair trial because the Commonwealth refused to grant immunity to Petrichko.[5] *See* Trial Court Opinion, 6/8/2010, at 4–5.

In *Smith,* the witness for whom the defense requested immunity had previously given a statement to the police directly implicating himself and completely exonerating Smith. The witness was a juvenile while Smith was an adult; thus, they were not co-defendants for trial purposes. While the Attorney General of the Virgin Islands was amenable to granting immunity, it deferred its acquiescence to the United States Attorney General, who declined to extend such consideration without reason. Smith's request that the trial court grant immunity despite the lack of the government's consent was denied.

On appeal, the *Smith* court held that in certain cases, judicially crafted immunity is warranted for a defense witness despite the objection of the prosecutor. The Third Circuit outlined two instances where this should occur: one, when the trial court finds prosecutorial misconduct by the government's deliberate intent to disrupt the

(b) Request and issuance.—The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:
(1) the testimony or other information from a witness may be necessary to the public interest; and
(2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
42 Pa.C.S. § 5947.

5. We note that the United States Courts of Appeals are split on this issue, and the United States Supreme Court has not offered an opinion on the matter. *Contra U.S. v. Straub*, 538 F.3d 1147, 1158 (9th Cir.2008); *U.S. v. Hunter*, 672 F.2d 815, 818 (10th Cir.1982) and *U.S. v. Serrano*, 406 F.3d 1208, 1218 (10th Cir.2005). In any event, "[w]e recognize and reiterate that the holdings of federal circuit courts bind neither this Court nor the trial court, but may serve as persuasive authority in resolving analogous cases. *See Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, [589 Pa. 296], 908 A.2d 875, 884 (2006) (reaffirming that 'inferior federal court decisions as persuasive but not binding, consistent with prior case law.')." *Montagazzi v. Crisci*, 994 A.2d 626, 634 n. 7 (Pa.Super.2010).

fact finding process; or two, where the testimony of the witness is clearly exculpatory and essential to the defense's case and when the government had no strong interest in withholding immunity. *Smith,* 615 F.2d at 974.

Pennsylvania Courts have had the opportunity to address *Smith* on several occasions. Notably, our Supreme Court has found the *Smith* decision instructive, but has never followed *Smith,* by distinguishing it factually. For example, in *Johnson, supra,* our Supreme Court held "that the trial court was correct in concluding that it lacked inherent power to grant judicial use immunity to the co-defendant." *Id.* at 1326. In that case, the proposed witness was a co-defendant whose case had been severed for trial, and the statement given by the witness was not clearly exculpatory. *Id.* at 1325. Additionally, whereas in *Smith* there was no legitimate reason proffered by the government to withhold immunity, in *Johnson,* there was a strong countervailing interest since the prosecutor would be severely hampered in the subsequent prosecution of the co-defendant.[6] *Id.* at 1326.

More recently, in *Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403 (2003), our Supreme Court had yet another occasion to address whether a trial court has authority to grant use immunity when such a request is opposed by the prosecution. Champney was charged with murder. At trial, he asserted a right to call Beth Bensinger to the stand. Ms. Ben-

singer was also charged in relation to the murder as she was accused of hiring Champney to kill the victim, her husband. Ms. Bensinger invoked her Fifth Amendment privilege and the trial court denied Champney's request that she be granted use immunity.

On appeal, Champney argued that he was denied a fair trial because of the trial court's denial of immunity to Ms. Bensinger. He argued that a judicially crafted immunity was warranted pursuant to *United States v. Sampson,* 661 F.Supp. 514 (W.D.Pa.1987). In rejecting this contention, the *Champney* court stated:

A district court decision such as *Sampson,* of course, does not bind this Court. In addition, as the *Sampson* court itself noted, the judicial use immunity doctrine it was obliged to follow under the Third Circuit's precedent in *Government of Virgin Islands v. Smith,* [*supra* ], had been rejected by all other Circuits which had considered the issue, and was also inconsistent with dicta in *Pillsbury Co. v. Conboy,* 459 U.S. 248 [103 S.Ct. 608, 74 L.Ed.2d 430] (1983) ("[n]o court has authority to immunize a witness"). *Sampson,* 661 F.Supp. at 518 n. 2. In any event, *Sampson* is distinguishable. In *Sampson,* the federal district court held that judicial immunity should be extended only where the witness's testimony would be "clearly exculpatory," i.e., that there is a reasonable probability that, but for the unavailability of the witness's testimony, the result of the

---

**6.** In *Commonwealth v. Mulholland,* 549 Pa. 634, 702 A.2d 1027 (1997), our Supreme Court summarized the *Johnson* holding as follows:

We have held that the decision to seek a grant of immunity in any individual case rests within the judgment of the prosecutor. It is up to the *executive* branch of government to decide when and to whom immunity will be granted. Furthermore, a decision

as to whether immunity should or should not be granted [rests] *entirely* within the judgment of the Attorney General or District Attorney.

*Mulholland,* 702 A.2d at 1035 (quotations omitted; emphasis in original). However, *Mulholland* did not discuss the application of *Smith,* but discusses the application of immunity in the context of selective prosecution.

proceeding would have been different, and where no strong governmental interests countervail against a grant of immunity. *Id.* at 519–20. Here, appellant has failed to demonstrate that Beth Bensinger's testimony would be clearly exculpatory. For this reason alone, his argument fails.

*Champney,* 832 A.2d at 415–16.

Thus, just as in *Johnson, supra,* the Supreme Court did not directly decide the applicability of *Sampson* or *Smith,* instead finding the cases distinguishable.

This Court has also had occasion to address this issue. Most recently, in *Commonwealth v. Yancoskie,* 915 A.2d 111 (Pa.Super.2006), this Court held that

> [e]ven if [the defendant's] counsel did request immunity [for a witness] from the trial judge, the judge would have been able to do nothing. As is stated in [42 Pa.C.S.] § 5947, it is the prosecutor's decision that commands. Accordingly, the trial court did not err in refusing to grant Wife immunity at the request of Appellant, as the court was powerless to do so.

*Id.* at 116.

Once again, we uphold this Court's prior holding—the prosecutor has complete discretion in deciding whether to grant immunity to a witness. Furthermore, the instant case is factually distinguishable from *Smith.* Doolin concedes that no prosecutorial misconduct has occurred. Doolin's Brief at 16. Doolin does contend, however, pursuant to *Smith, supra,* that the proffered testimony is clearly exculpatory and there are no strong countervailing governmental interests in not granting immunity. Doolin's Brief at 18. We disagree.

The Assistant District Attorney set forth the Commonwealth's rationale for not granting immunity to Petrichko.

I would like to outline the reasons why we will not give the witness, [Petrichko], immunity.

1, this [Petrichko] is a known member of the Pagans Motorcycle Club, which is a criminal organization.

2, he's a drug dealer, a known drug dealer.

3, he's a thief. In fact, he has stolen money from the Pagan organization.

4, his proffered testimony is inconsistent with the evidence that we are in possession of, including defendant's own statements to the police at the scene. In addition, it's inconsistent with [Petrichko's] statement to the police that evening at the scene.

Mr. Rothman wants to say that credibility is not a factor when the Commonwealth determines whether to grant an individual immunity. It absolutely is a significant factor. We must judge the proffered testimony and this person's background, and in this case, there is nothing credible about [Petrichko].

In fact, like I said, he's a proven liar, a thief. He's a member of a criminal organization, and I believe this whole, with all due respect to the [trial court] illusory Fifth Amendment assertion is to make himself more valuable to the government agency of the Attorney General's Office.

He has some significant problems with his being a confidential informant with them, and I think that this is all an attempt to make him more valuable, in addition, because the person he claims to name who fired the fatal shot in this case is the target of that investigation.

N.T., 5/27/2010, at 5–6.

Thus, the instant case is distinguishable from *Smith,* since the Commonwealth of-

fered a rationale for its decision not to immunize Petrichko.

Because the trial court abused its discretion and committed an error of law in applying *Smith,* we reverse the decision of the trial court dismissing charges against Doolin.

Order reversed. Case remanded. Jurisdiction relinquished.