J-S46014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| CRAIG POUST | |
| Appellant | No. 2016 MDA 2016 |

Appeal from the Judgment of Sentence October 13, 2016
In the Court of Common Pleas of Snyder County
Criminal Division at No(s): CP-55-CR-0000106-2016

BEFORE:  BOWES, J., OLSON, J., AND STEVENS, P.J.E.,*

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 21, 2017**

Craig Poust appeals from the aggregate judgment of sentence of eight and one-half to twenty years incarceration imposed following his conviction at a bench trial for numerous drug and gun crimes.  We affirm the convictions, but vacate judgment of sentence and remand for further proceedings.

The Commonwealth established the following.  On February 29, 2016, authorities from the Pennsylvania State Police executed a search warrant on a residence.  N.T., 10/11/16, at 30.  The property to be searched was described as a "36 to 38 foot, fifth-wheel camper with a couple slide-outs." Appellant and his live-in girlfriend, Chanel Kantz, were present when the warrant was executed.  *Id*. at 11.  Corporal Brent Bobb asked Appellant if

_____

* Former Justice specially assigned to the Superior Court.

there were any weapons in the residence, and Appellant showed the authorities a handgun located near the entrance on top of a small wooden cabinet. *Id*. at 12, 34.

Located within approximately six inches of the firearm was an oil filter with a hole at the end, such that a bullet could pass through. Suspecting that the device was a homemade sound suppressor, Corporal Chad Shultz placed the oil filter on the firearm's muzzle and observed that the filter fit on the threaded portion. He further testified that the oil filter, which would not otherwise fit the gun's threading, had a special adapter. *Id*. at 37-38. Appellant told Corporal Bobb that the adapter was a solvent catcher, and claimed that the hole in the oil filter resulted when "[Kantz] was cleaning her gun and accidentally fired a round through the oil can." *Id*. at 39. The officers then proceeded to search a separate structure immediately next to the camper, which contained a marijuana growing operation. *Id*. at 41-42.

Appellant was subsequently charged with four counts pertaining to the marijuana: possession with intent to deliver, manufacture, conspiracy to manufacture, and possession of drugs. Respecting the firearm, he was charged with prohibited possession of a firearm and possession of a prohibited offensive weapon. Following a bench trial, Appellant was found guilty of all charges except conspiracy. The court imposed sentence two days after trial, over Appellant's objection, and without the benefit of a pre-sentence investigation report.

On October 20, 2016, Appellant filed counseled post-sentence motions. Five days later, Appellant filed a *pro se* notice of appeal. The trial court accepted the *pro se* motion, granted his request for *in forma pauperis* status notwithstanding the fact Appellant was already represented, and denied the post-sentence motion as moot due to the filing of the *pro se* notice of appeal. This order also states that the post-sentence "[m]otion would be denied in any event." Order, 10/27/16, at 1.

The judge then directed counsel to file a concise statement of matters complained of on appeal. Appellant's counsel complied, and filed a statement raising the same seven issues presented in the October 20, 2016 post-sentence motion. Counsel then mistakenly filed a notice of appeal to the Commonwealth Court of Pennsylvania, which transferred the appeal to this Court. Order, 11/28/16, at 1. Thus, counsel apparently treated the October 25, 2016 order as validly denying the post-sentence motions.

Preliminarily, we note the procedure irregularities that implicate our jurisdiction. Appellant's *pro se* notice of appeal should have been accepted for filing and forwarded to counsel.[1] Counsel had already filed post-sentence

---

[1] Rule of Criminal Procedure 576(A)(4) states:

In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or

*(Footnote Continued Next Page)*

motions, and it was improper to deny those motions as moot due to a *pro se* notice of appeal. **See Commonwealth v. Cooper**, 27 A.3d 994 (Pa. 2011) (litigant, unbeknownst to counsel, filed *pro se* notice of appeal which proceeded on its course; counsel simultaneously filed post-sentence motions, resulting in parallel appeals).

The question is what effect those circumstances have on this appeal. We could quash the appeal and remand for consideration of the timely post-sentence motions. **Commonwealth v. Borrero**, 692 A.2d 158 (Pa.Super. 1997) (treating as interlocutory an appeal filed while post-sentence motions were still pending when appeal was filed, trial court ordered to deem post-sentence motions filed *nunc pro tunc* on date the certified record was remanded). However, we believe that action is unwarranted in light of our conclusion that Appellant is entitled to a resentencing hearing, and Appellant is therefore free to file post-sentence motions regarding any issues arising from that proceeding.

*(Footnote Continued)* ————————

> document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt.

As to the remaining legal claims, we shall address them in the interest of judicial economy. Quashing this appeal would serve only to delay the resentencing. Significantly, the remaining legal questions are amenable to disposition at this time as the record is complete. "The Superior Court had everything it needed to dispose of the appeal on its merits, and there was no basis for returning the matter to the trial court." *C.f. Cooper*, *supra* at 1008; *Borrero*, *supra* (observing that quashing appeal was necessary due to fact one of the issues challenged the weight of the evidence, which must be first addressed by the trial judge); Hence, we decline to quash despite the improper denial of post-sentence motions, and address the issues presented by Appellant for our consideration.

> I. Whether the Commonwealth proved by sufficient evidence that the appellant farmed 21 marijuana plants?
>
> II. Whether the guilty verdict on count 5 (felon not to possess firearm) was supported by sufficient evidence to establish that the appellant constructively possessed a firearm which was lawfully owned and possessed by his live-in girlfriend?
>
> III. Whether the guilty verdict on count 6 (prohibited offensive weapons) was supported by sufficient evidence to establish that the appellant constructively possessed the oil filter/suppressor device which was ordered, owned, and possessed by his live-in girlfriend?
>
> IV. Whether the trial court erred in permitting Ms. Chanel Kantz to invoke her Fifth Amendment right to remain silence [*sic*] with respect to the facts surrounding counts 5 as she did not face criminal jeopardy on the same?
>
> V. Whether the trial court erred in sentencing Mr. Poust on two days short notice after verdict without the benefit of a pre -

sentence investigation report and without time to prepare evidence in support of leniency?

VI. Whether the trial court erred in imposing consecutive sentences on the theory that Mr. Poust was a dangerous, armed drug dealer when that theory was based on pure speculation and there was no basis for concluding that Mr. Poust used the handgun or suppressor device in furtherance of illegal acts?

Appellant's brief at 5-6.

Appellant's first three claims are presented as challenges to the sufficiency of the evidence. Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

**Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015).

First, Appellant faults the adequacy of the Commonwealth's evidence that he grew twenty-one marijuana plants, as opposed to sixteen. Since the number of plants is not relevant to the sufficiency of the evidence for any of Appellant's convictions, but rather the offense gravity score, **see** 204 Pa.Code. § 303.15 (for manufacture/possession with intent to deliver, offense gravity score is seven for twenty-one to fifty-one plants, and five for ten to twenty-one plants), we defer discussion of this issue.

- 6 -

Appellant's second and third issues concern the crimes of prohibited possession of a firearm and prohibited offensive weapon. The former offense criminalizes the following:

**(a) Offense defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1). The latter crime reads as follows:

**(a) Offense defined.--**A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

18 Pa.C.S. § 908. [2]

Appellant's argument regarding both convictions overlaps and exclusively challenges the element of possession. Since Appellant was not in actual possession of the firearm, the Commonwealth's case rests on constructive possession, which is "a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband

_____

[2] We note that the definition of offensive weapon includes a "firearm . . . specially adapted for concealment or silent discharge[.]" 18 Pa.C.S. § 908(c).

was more likely than not." ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (Pa. 1986). The Commonwealth must establish "conscious dominion," which is defined as "the power to control the contraband and the intent to exercise that control." ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa.Super. 2004) (citation omitted). In assessing whether the Commonwealth has established the power and intent to exercise control, we look to the totality of the circumstances.

> Constructive possession may be proven by circumstantial evidence and the requisite knowledge and intent may be inferred from examination of the totality of the circumstances. Moreover, we review circumstantial evidence under the same standard as direct evidence, *i.e.*, that a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Smith***, 146 A.3d 257, 263 (Pa.Super. 2016) (quotation marks and citations omitted). The Commonwealth cannot satisfy its case through evidence so patently unreliable that only conjecture will lead to the necessary factual finding. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." ***Commonwealth v. Valette***, 613 A.2d 548, 551 (Pa. 1992). Thus, we have established that a minimum requirement in constructive possession cases is that the defendant have knowledge of the item's existence. ***Commonwealth v. Hamm***, 447 A.2d 960, 962 (Pa.Super. 1982) ("At the least, the evidence must show that the defendant knew of the existence of the item.") (citations omitted).

Appellant argues that the evidence establishing constructive possession was nothing more than conjecture. He highlights that the gun was found on a shelf, and, as such, both he and his girlfriend had equal access to the firearm. Appellant also states that he was well aware of his inability to lawfully possess firearms and therefore avoided possessing the firearm.

Appellant is correct that the fact multiple persons have equal access to the item cannot conclusively establish possession. "[W]here another person has equal access to the area where illegal contraband or weapon is found, the defendant cannot be said to have either the power to control or the intent to control such contraband or a weapon *per se.*" ***Commonwealth v. Heidler***, 741 A.2d 213, 216 (Pa.Super. 1999) (*en banc*).

Nevertheless, equal access is not an affirmative defense, as more than one person can constructively possess an item. ***Commonwealth v. Macolino***, 469 A.2d 132, 136 (Pa. 1983) ("It is no defense that the appellee's wife could also have maintained a conscious dominion over the cocaine. Possession of an illegal substance need not be exclusive; two or more can possess the same drug at the same time."). "[I]t is possible for two people to have joint constructive possession of an item of contraband." ***Commonwealth v. Kinard***, 95 A.3d 279, 292 (Pa.Super. 2014). Therefore, the fact Appellant's girlfriend had equal access is simply a relevant consideration under the totality of the circumstances.

We are satisfied that the totality of the circumstances warrants affirmance. The threshold requirement of knowledge of the item's existence was clearly met, as the evidence established that Appellant lived at the residence and directed the officers to the gun and oil filter. Additionally, Appellant identified the real firearm among a collection of "multiple airsoft toys in the camper," which Corporal Bobb testified were "very realistic looking." N.T., 10/11/16, at 21. The fact that Appellant knew the location of the one real firearm among several air guns suggested intimate knowledge. Furthermore, Appellant and his girlfriend resided in a small camper. Appellant's argument that he would refrain from possessing the firearm due to his prior conviction proves the necessity of the constructive possession doctrine, which is "a pragmatic construct to deal with the realities of criminal law enforcement." *Mudrick*, *supra* at 1213. Obviously, it would frustrate legitimate law enforcement purposes if Appellant, who is prohibited from lawfully possessing a firearm, could insulate himself from prosecution by claiming his own legal disability as a pseudo defense to the charge.

These circumstances are similar to *Commonwealth v. Sanes*, 955 A.2d 369 (Pa.Super. 2008), in which Sanes was convicted of, *inter alia*, possession of a firearm discovered during a search warrant. Sanes, who was discovered in a bedroom along with his girlfriend, showed police where two guns were located. *Id*. at 371. We affirmed, stating, "[M]ere presence at the scene is insufficient to prove constructive possession . . . [but] appellant

lived in the residence, knew exactly where the firearms were, and led police to them." *Id*. at 374 (citations omitted). Viewing the totality of the circumstances in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient to sustain the finding of constructive possession.

Appellant's fourth issue challenges the trial court's ruling that Chanel Kantz, whom Appellant called as a defense witness, properly invoked her Fifth Amendment privilege against offering testimony. The following discussion occurred.

> THE COURT: Well, Mr. Best, what questions because not all questions would be privileged I would assume. What questions would you pose to Ms. Kantz?
>
> MR. BEST: Your Honor, my questions are going to hone in on the issue of the firearm that specifically that she was the owner of the firearm. As to my understanding that she kept the firearm in a lock box or habit of keeping the firearm in a lock box, and as to where that firearm had been stowed on the day in question and as to whether or not Ms. Kantz had taken it out of the lock box on the date in question. And I was also intending to ask her about whether or not she had acquired the oil can with the intention of using it as a solvent catcher. I would argue to the Court if the privilege is invoked that those would be lawful activities for her and may not necessarily be covered by privilege. I represent to the Court that I do not intend at all to ask her anything to do with any allegations of marijuana cultivation or use.

N.T., 10/11/16, at 63.

As reflected by Appellant's response, there were at least two separate topics with respect to the firearm: the generic possession of the firearm, and

its adaptation for silent discharge.  After Ms. Kantz stated under oath that she intended to invoke her rights, the trial court granted a blanket privilege, *i.e.* a privilege not to answer any questions, a practice our law generally disfavors.  "In addition, a witness may ordinarily only assert the privilege to avoid responding to a particular question. A blanket privilege generally is not permitted."  **Commonwealth v. Treat**, 848 A.2d 147, 148 (Pa.Super. 2004) (citing **Commonwealth v. Tielsch**, 789 A.2d 216, 217 (Pa.Super. 2001)).

The instant ruling is reviewed for an abuse of discretion.  **Tielsch**, **supra** at 217; **Commonwealth v. Doolin**, 24 A.3d 998 (Pa.Super. 2011) ("[W]e cannot conclude that the trial court abused its discretion by granting [the witness] a blanket Fifth Amendment privilege in this case.").  The **Treat** Court summarized the applicable legal principles.

> As we stated in [**Commonwealth v. Kirwan**, 847 A.2d 61 (Pa.Super. 2003)], "[t]here is no formula for determining when and how the Fifth Amendment privilege can be asserted (nor do we think one should be created)...." **Kirwan**, 847 A.2d at 65. We are confident that trial courts can draw on their wealth of experience and fashion procedures appropriate to the practicalities of the case and that will allow the judge to make a sufficiently informed decision.  We are likewise confident that lower courts will create a record sufficient to demonstrate the propriety of permitting or denying the privilege at the same time as preserving any Fifth Amendment right.
>
> The relevant parameters of the privilege are clear.  The privilege extends not only to statements that by themselves would be evidence that the declarant has committed a crime, but also to assertions that would be "a link in the chain" of evidence needed to convict. **Commonwealth v. Kopicz**, 2003 PA Super 499, ¶

19, 840 A.2d 342. "An individual who invokes the privilege must have a reasonable basis for believing that the testimony to be given will be incriminatory." *Commonwealth v. Rizzo*, 455 Pa.Super. 311, 688 A.2d 185, 190 (1996), *rev'd on other grounds,* 556 Pa. 10, 726 A.2d 378 (1999)

. . . .

[T]he trial court must decide for itself whether the privilege exists. "It is for the court to say whether [the witness'] silence is justified." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Unless the privilege clearly does not apply, the trial court should not require the witness to answer.

*Id*. at 148–49 (footnote and paragraph numbers omitted).

We find no cause to disturb the trial court's ruling. First, with respect to any questions about the oil filter adapter, Kantz was awaiting trial on a prohibited offense weapon charge. Thus, any questions regarding that topic would clearly be covered by the privilege.

Second, we find that the same logic extends to questions regarding the possession of the gun. The parties did not dispute that Kantz purchased the firearm, and her possession of the weapon in and of itself was not illegal. Therefore, Appellant plausibly posited that Kantz could answer generic questions about the gun and how it was stored. However, possession is an element of the crime of prohibited offensive weapon. Thus, we cannot say the privilege clearly does not apply, and therefore the court did not abuse its discretion.

Additionally, we note that in **Commonwealth v. Knox**, 105 A.3d 1194 (Pa. 2014), our Supreme Court observed that a criminal defendant may be held accountable for the illegal possession of a firearm by another.

> The facts underlying this appeal are cumbersome. In general, they reflect a recurring scenario in which a defendant (presently, Appellant) is charged with a possessory weapons offense deriving from the role of a firearm in a broader criminal undertaking, although, factually, another person (here, Appellant's brother) actually possessed the weapon during the episode and the defendant himself was unarmed.

**Id**. at 1195. This case implicates a variation of that scenario, as Appellant was lawfully prohibited from possessing a firearm due to a prior conviction. Thus, any admission by Kantz that she knowingly possessed the firearm and permitted Appellant access could subject her to later prosecution, on a theory of accomplice or conspiratorial liability for Appellant's prohibited possession of a firearm, assuming it could be established that Kantz knew Appellant was not permitted to possess a firearm. Therefore, her testimony would possibly provide a link in a chain of evidence needed to convict.

Appellant's remaining issues concern sentencing. He posits that the trial court erred by failing to order a pre-sentence investigation ("PSI") report. Next, regarding the actual sentence, Appellant argues that the trial court abused its discretion in imposing consecutive sentences. Finally, Appellant maintains that the Commonwealth failed to establish that he possessed twenty-one plants. We conclude that Appellant is entitled to a new sentencing hearing because the court erroneously sentenced Appellant

- 14 -

without the benefit of a PSI report, and we do not reach the remaining sentencing issues.

"[A] claim that the court erred in failing to order a PSI report raises a discretionary aspect of sentencing of which a defendant's right to appellate review is exceptionally limited." ***Commonwealth v. Flowers***, 950 A.2d 330, 331 (Pa.Super. 2008). Before we review such a claim on the merits, we engage in a four part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [*see* Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. ...

***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa.Super. 2013) (citation omitted). This appeal was timely filed and includes a separate statement of reasons as required by Pa.R.A.P. 2119(f). Additionally, Appellant specifically objected to the lack of a PSI report at the sentencing hearing, preserving the issue for our review. Finally, Appellant alleges that the court did not state adequate reasons for dispensing with the report. This claim presents a substantial question. ***Flowers***, ***supra***.

We now examine the merits. Pursuant to Pa.R.Crim.P. 702(A)(2)(a), a judge is required to explain the reasons for dispensing with a PSI report when, as here, incarceration for one year or more is a possible sentence.

The trial court did not give an on-the-record explanation for its failure. Instead, the trial court justified its decision in its Pa.R.A.P. 1925(a) opinion as follows.

> The Court had the Sentencing Guideline forms and based the sentence on those. The sentences all were within the standard range of the Sentencing Guidelines and the Court did not deviate in any way from a standard range sentence.
>
> The defense has failed to cite any reason why a delay in sentencing would have aided the Defendant or assisted the Court in fashioning any type of a different sentence.

Trial Court Opinion, 12/29/16, at 8.

The failure to set forth this rationale at the sentencing hearing itself warrants reversal. "[A] sentencing court's reasons for a particular sentence must be given contemporaneously with the imposition of the sentence. A more extensive explanation in an opinion filed pursuant to Rule 1925(a) will not cure a failure to articulate reasons at the time of sentencing." *Commonwealth v. Serrano*, 150 A.3d 470, 475, n.7 (Pa.Super. 2016) (citation omitted). Even if there is a distinction to be drawn between the reasons for a sentence and the reasons for dispensing with a PSI, the trial court incorrectly focused its analysis on the length of the sentence. Yet that conclusion overlooks the fact that Appellant's PSI claim pertains to whether the sentence was appropriately individualized. In other words, Appellant's claim challenges the means by which the trial court arrived at its sentence, not the actual sentence.

We recognize that the failure to order a PSI does not warrant reversal *per se*. In **Flowers**, **supra**, we held that Rule 702(A)(2) does not require a court to specifically document the reasons for dispensing with a report if the judge possesses the necessary information from another source. Thus, **Flowers** recognized that the harmless error doctrine might apply "[if] the court elicited sufficient information during the colloquy to substitute for a PSI report, thereby allowing a fully informed sentencing decision." **Id**. at 333. However, the fact that the trial court faulted Appellant for not offering mitigating information after-the-fact amounts to a concession that the court failed to "elicit[ ] sufficient information . . . to substitute for a PSI report" at the time of sentencing. **Flowers**, **supra**. Appellant did not bear the burden of establishing that a PSI would have been helpful. Accordingly, this sentence was not individualized and therefore must be vacated. Since we conclude Appellant is entitled to resentencing we need not address Appellant's remaining sentencing claims.

Finally, we note that, following submission of briefs in this matter, counsel filed an application to withdraw representing that his contract with Snyder County for court appointments terminated during the pendency of these proceedings. We grant that application. Upon remand, the trial court shall appoint new counsel for any further proceedings.

Judgment of sentence vacated. The application of James L. Best, Esq. to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/21/2017</u>