J-A07025-21

2021 PA Super 117

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH GERARD AULISIO | : | |
| | : | |
| Appellant | : | No. 230 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 18, 2019
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001386-1981

BEFORE: BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.: **FILED: JUNE 8, 2021**

Appellant Joseph Gerard Aulisio appeals from the Judgment of Sentence imposed at a resentencing hearing following the U.S. Supreme Court decisions in **Miller** and **Montgomery**.[1] He challenges the court's imposition of two consecutive terms of incarceration of thirty years to life, arguing that the aggregate minimum term of sixty years is a *de facto* life sentence. After

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **Miller v. Alabama**, 567 U.S. 460 (2012) (holding that the imposition of a sentence of life without parole ("LWOP") on juvenile offenders violates the Eighth Amendment of the Constitution); **Montgomery v. Louisiana**, 577 U.S. 190 (2016) (holding **Miller** applies retroactively). **See also Commonwealth v. Batts**, 163 A.3d 410, 452 (Pa. 2017) ("**Batts II**") (concluding that "in Pennsylvania, a faithful application of the holding in **Miller**, as clarified in **Montgomery**, requires the creation of a presumption against sentencing a juvenile offender to [LWOP].").

careful review, and pursuant to **Commonwealth v. Foust**, 180 A.3d 416 (Pa. Super. 2018), we affirm.

In 1987, Appellant received two consecutive sentences of mandatory life without parole ("LWOP") after a jury convicted him of two counts of First-Degree Murder.[2]  Appellant was fifteen and a half years old when he committed the crimes.

Following the United States Supreme Court's decisions in **Miller** and **Montgomery**, the PCRA court granted Appellant's post-conviction collateral request for resentencing. Prior to re-sentencing, Appellant underwent a mental health examination by the Commonwealth's expert, Dr. Steven Samuel.  Dr. Samuel authored a report opining that Appellant was amenable to rehabilitation.  As a result, the Commonwealth did not request a sentence of LWOP.  The court ordered a pre-sentence investigation.

On December 18, 2019, the court held a resentencing hearing at which several prison guards, mental health counselors employed by the prison, Appellant's brother, and Appellant himself testified.  In addition, an art

---

[2] Evidence showed that in 1981, Appellant shot Cheryl and Christopher Ziemba, ages 4 and 8 respectively, at close range with a shotgun as they and Appellant played in an unfinished house owned by Appellant's father in Old Forge.  Appellant then drove the children's bodies wrapped in a blanket and a carpet to an old strip mine several miles away and left them at the bottom of a ravine.  Appellant returned to the home and cleaned up the crime scene. Appellant then participated in the extensive two-day community search for the children that ensued. Firefighters found the children's bodies.  The jury found Appellant guilty of murder and kidnapping and he was originally sentenced to death.  Six years later, the kidnapping conviction was vacated, and Appellant was resentenced to two counts of LWOP.

professor who had mentored Appellant from outside prison testified regarding Appellant's artwork. Immediately following the hearing, the court imposed two consecutive terms of thirty years' to life imprisonment, stating on the record its reasons for imposing consecutive rather than concurrent sentences. Appellant filed a Post-Sentence Motion, which the court denied.

Appellant filed a timely Notice of Appeal. Appellant and the sentencing court complied with Pa.R.A.P. 1925.

Appellant presents the following Statement of Questions Involved:

1.  Is it unconstitutional and illegal to impose individual sentences of thirty (30) years to life and, when aggregated, sixty (60) years to life, in either case a *de facto* sentence of life imprisonment, absent proof beyond a reasonable doubt and a finding that the juvenile is permanently incorrigible, irreparably corrupt and depraved, and beyond rehabilitation?

     a. Is an abuse of discretion present where there does not exist a finding that the Appellant is permanently incorrigible?

Appellant's Br. at 3.

**Legality of Sentence**

Appellant challenges the legality of his sentence. We review a challenge to the legality of a sentence *de novo* and our scope is plenary. ***Foust***, 180 A.3d at 422.

Appellant contends his aggregate minimum sentence of 60 years' incarceration is a *de facto* life sentence and, thus, violative of ***Miller***, as interpreted by ***Batts II***, because the court did not find that he is not amenable

to rehabilitation. Based on precedential case law, we conclude Appellant's legality challenge warrants no relief.[3]

In **Miller**, the U.S. Supreme Court held that due to the vagaries of youth, a juvenile convicted of murder carries a presumption of rehabilitation and before imposing a sentence of life on convicted juveniles, courts must consider the "hallmarks" of youth, including "immaturity, impetuosity, and the failure to appreciate risks and consequences." 567 U.S. at 477. In addition, the sentencer must consider the juvenile's home and family environment, the circumstances of the homicide and the offender's participation in the crime, and the juvenile's amenity to rehabilitation. **Id**. Together, these factors are referred to as the "**Miller** factors."

However, in **Commonwealth v. White**, 193 A.3d 977, 983 (Pa. Super. 2018), this Court held that "a sentencing court must consider [the] **Miller** factors only in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences." Thus, where the Commonwealth does not seek a LWOP sentence,

---

[3] We are mindful that the Pennsylvania Supreme Court is currently reviewing whether a sentence of 50 years to life imposed upon a juvenile constitutes "a *de facto* life sentence requiring the sentencing court, as mandated [in **Batts II**, to] first find permanent incorrigibility, irreparable corruption, or irretrievable depravity beyond a reasonable doubt." **Commonwealth v. Felder**, 187 A.3d 909 (Pa. 2018). **Cf. Jones v. Mississippi**, 141 S.Ct. 1307, 1321-23 (2021) (holding that **Miller** does not require a specific finding of incorrigibility and lack of amenability to rehabilitation but states may continue to require such explicit findings).

the issue of whether the court made a specific finding of an inability to be rehabilitated is moot. *Id*.

In *Commonwealth v. Foust*, *supra*, this Court addressed, as a matter of first impression, the same claim Appellant asserts here—that the imposition of two consecutive terms of 30 years' to life imprisonment constituted an unconstitutional *de facto* life sentence in violation of *Miller*, *supra*. After thoroughly reviewing the development of federal and state juvenile sentencing law, the *Foust* Court concluded that Pennsylvania courts must consider sentences individually and not in the aggregate to determine their legality with respect to the principles enunciated in *Miller*. The Court observed:

> Appellant asks us to declare unlawful the trial court's discretionary determination to impose consecutive (but independently valid) punishments for a double murder conviction under principles of the Eighth Amendment. This position enjoys no support under Pennsylvania law and runs contrary to decisions that have previously addressed the claim *. . .* We reject Appellant's effort to invalidate the legality of his sentence under principles traditionally confined to discretionary sentencing review.
>
> * * *
>
> In our view, whether the aggregate or individual sentences control for purposes of *Miller* is the most difficult question raised in this appeal. We have scrutinized relevant Pennsylvania case law, prior decisions of the Supreme Court of the United States, and persuasive authority from other jurisdictions. Although we acknowledge that there is ground for differing views, we believe that we are on sound legal footing and consistent with Pennsylvania law. Accordingly, we hold that we must consider the individual sentences, not the aggregate, to determine if the trial court imposed a term-of-years sentence which constitutes a *de facto* LWOP sentence.

*Foust*, *supra* at 435, 437-38 (internal citation omitted).

The **Foust** Court then concluded that, because the relevant sentencing statute provided that if the murders had been committed after June 24, 2012, the sentence would have been 35 years to life for each crime, the fact that the court imposed a minimum 30 years' incarceration for each conviction did not violate **Miller**. Further, the Court stated:

> We explicitly decline to draw a bright line in this case delineating what constitutes a *de facto* LWOP sentence and what constitutes a constitutional term-of-years sentence *. . .* We similarly decline to set forth factors that trial courts must consider when making this determination, *i.e.*, whether they must look to the life expectancy of the population as a whole or a subset thereof and whether the defendant must be given a chance at a meaningful post-release life. We need not confront these difficult questions in this case. Instead, we limit our holding to the facts of this case . . . A sentence of 30 years to life imprisonment does not constitute a *de facto* LWOP sentence which entitles a defendant to the protections of **Miller**.
>
> * * *
>
> Appellant will be eligible for parole when he is in his seventies. Although he may not live this long, he has a chance of being released into society. It is within the trial court's discretion to conclude that an individual who viciously took the lives of two innocent people is not entitled to be released into society at an earlier age, even with the reduced culpability recognized in **Roper**, **Graham**,[4] and **Miller**.

**Id.** at 438, 441 (internal citations omitted).

**Foust** is dispositive in the instant case. As in **Foust**, Appellant received two thirty-year minimum sentences; like **Foust**, he will be eligible for release when he is in his seventies. Because our current precedential case law holds

---

[4] **Roper v. Simmons**, 543 U.S. 551 (2005); **Graham v. Florida**, 560 U.S. 48 (2010).

that a 30-year minimum sentence for a conviction of First-Degree Murder is not a *de facto* life sentence, and because the Commonwealth did not seek a sentence of LWOP, Appellant's challenge to his aggregate sentence as a violation of the protections of **Miller** garners no relief.

**Discretionary Aspect of Sentence**

Although not stated explicitly in his question presented, within his brief Appellant argues that the court abused its discretion in imposing consecutive sentences rather than concurrent sentences, asserting that the aggregate sentence resulted in a term of incarceration which is contrary to the fundamental norms which underlie the sentencing process and violated the express provisions of the Sentencing Code. Appellant's Br. at 22.

Long-standing precedent of this Court recognizes that 42 Pa.C.S. § 9721(a) affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. **Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa. Super. 2005). An appellant is not entitled as a matter of right to a review of the discretionary aspects of his sentence. **Commonwealth v. Patterson**, 180 A.3d 1217, 1232 (Pa. Super. 2018). Rather, an appellant must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

- 7 -

substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

Here, Appellant filed a timely Notice of Appeal, preserved the issue of sentence excessiveness in a Motion for Reconsideration, and included a statement pursuant to Pa.R.A.P. 2119(f). We thus consider whether Appellant has raised a substantial question.

"[T]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances[.]" *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted). Here, Appellant avers that the imposition of consecutive sentences violated the express provisions of the Sentencing Code and that the aggregate sentence of sixty years' incarceration is contrary to the fundamental norms which underlie the sentencing process. Appellant's Br. at 22. We conclude this averment presents a substantial question. *Commonwealth v. Dodge*, 77 A.3d 1263, 1271-73 (Pa. Super. 2013). We, thus, proceed to determine whether the trial court abused its discretion in imposing consecutive rather than concurrent sentences.

In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard.

> An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly

unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Moury*, 992 A.2d at 169–170(citation and brackets omitted).

Additionally, "this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d)." *Dodge*, 77 A.3d at at 1274 (citation omitted). Section 9781 provides:

**(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c) and (d).

Appellant avers that the court "heavily relied on the gruesomeness of the crime" while disregarding Dr. Samuel's report and the testimony given in 1981 by a psychologist during Appellant's decertification hearing. Appellant's Br. at 35-36. He also asserts that the sentencing "court further erred when placing unreasonable weight on the nine[ ] misconducts that [Appellant] had acquired over thirty-eight years of incarceration and the alleged threats [Appellant made] that were not substantiated through the pursuit of disciplinary action against [Appellant.]" *Id*. at 36, 38.

Our review of the resentencing transcript and the court's Rule 1925(a) Opinion reveals that the court thoroughly reviewed the record, considered and weighed all documents submitted for its consideration, including the PSI report and each of Appellant's mental health evaluations, heard and observed the demeanor of all witnesses, and considered relevant case law before imposing Appellant's sentence. N.T. Sentencing, 11/18/19, at 215-25; Trial Ct. Op., dated 8/20/20. The court acknowledged that Appellant was not subject to a sentence of LWOP because, after receiving Dr. Samuel's expert

report, the Commonwealth had not requested it. N.T. Sentencing, at 215. The court noted that it, nonetheless, considered the **Miller** factors and 18 Pa.C.S. § 1102.1.[5] N.T. Sentencing, at 216.

As Appellant notes, the court spoke about the heinous nature of the murders, as well as Appellant's actions and behavior after the crimes and the significant impact of the crimes on the victims, their families, and the community of Old Forge. **See**, **e.g.**, **id**., at 216-218, 222-223. However, the court also acknowledged Appellant's youth when he committed the crimes, the mental health examinations conducted in 1981 showing, *inter alia*, Appellant's below-average IQ, and the testimony regarding Appellant's difficult childhood and his father's abusive conduct which caused significant family dysfunction. **Id**., at 219-20. The court also found that Appellant's artwork created in prison demonstrated that Appellant had taken "steps in the direction of rehabilitation." **Id**., at 220-21.

In considering the safety of the public if Appellant were to be released, the court credited the testimony of three corrections officers who stated that within 4 years of the resentencing hearing, Appellant had threatened to hurt them or their families upon his release. **See, id**., at 216-219. The court also noted the testimony of an attorney who began researching Appellant's case in

---

[5] 18 Pa.C.S. § 1102.1(a)(1) provides that a person convicted after June 24, 2012, of first-degree murder who committed the crime while between 15 and 18 years old must be sentenced to a minimum term of 35 years' incarceration. The court sentenced Appellant to minimums of 30 years.

1988 intending to write a book who testified that in 1992, he received a threatening letter from Appellant at his home address, an address he never gave Appellant. *Id*.

Significantly, the court stated that it imposed consecutive sentences because it saw no "true remorse here. And any remorse that was expressed, I see as manipulation" for which "there was precedent in the record and prison records [showing] that there was outright manipulation that took place within the prison and as reported in the prison records." *Id*. at 224. The court also emphasized that Appellant committed two separate premeditated murders and stated it "cannot permit volume discounts when it comes to first degree murder." *Id*. at 224.

Based on our review of the record, precedential case law, and our standard of review, we are unable to conclude that the court abused its discretion in imposing consecutive rather than concurrent sentences. Accordingly, we affirm.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2021