J-A05019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                     :                 PENNSYLVANIA
                     :
                     :
           v.                 :
                     :
                     :
ANTWAN JOVAN WASHINGTON      :
                     :
          Appellant        :      No. 575 EDA 2022

Appeal from the Judgment of Sentence Entered February 4, 2022,
in the Court of Common Pleas of Lehigh County,
Criminal Division at No(s):  CP-39-CR-0003985-2018.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:           **FILED MARCH 31, 2023**

Antwan Jovan Washington appeals from the judgment of sentence imposed following his pleas to murder of the third degree and two counts of aggravated assault,[1] an aggregate term of 27 to 55 years of imprisonment. He challenges the discretionary aspects of sentencing.  We affirm.

The sentencing court summarized the facts of this case:

> On July 31, 2018, several officers with the Allentown Police Department responded to a report of a shooting inside a residence located [in Allentown].  Inside the residence, police located Britney Garland (31), [C.M.] (16), and Adrien Welch (19), the victims, who were suffering from gunshot wounds.  They were transported by ambulance to Lehigh Valley Hospital.  [C.M.] was shot eight separate times, including five times in her torso, once in her right arm, and twice in [her] left arm.  She was pronounced dead by physicians at the emergency room.  Britney Garland was

---

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1).

shot multiple times in her legs and she suffered from a fracture to her right femur. Adrien Welch was shot once in his right leg.

Investigating officers subsequently learned that [Washington] lived at the residence with Ms. Garland and her two children. They ended their relationship earlier that week. [Washington] left to go to New York and told her to sell his car. He subsequently returned to the residence. Upon his return, he found Ms. Garland cooking a meal for Mr. Welch and [C.M.]. Mr. Welch and Ms. Garland were dating one another.

[Washington] interacted with Ms. Garland and/or Mr. Welch, after which he proceeded up to the second floor. He procured a handgun from a bedroom, returned to the first floor, and began shooting, striking all three victims. [Washington] fled from the residence. He surrendered himself to the police at his former attorney's office on August 2, 2018. The gun was recovered from a drop-down ceiling at [Washington's sister's apartment].

Sentencing Court Opinion, 4/13/22, at 2–3.

Police charged Washington with criminal homicide and two counts each of attempted homicide and aggravated assault. On August 19, 2021, Washington entered guilty pleas to murder of the third degree and two counts of aggravated assault. The only agreement was that his sentences for the two counts of aggravated assault would run concurrently. The court scheduled sentencing and ordered the preparation of a pre-sentence investigation report (PSI).

On February 4, 2022, the sentencing court imposed sentence in this case. At Count 1, murder of the third degree, the court sentenced Washington to 20 to 40 years of imprisonment. At Count 4, aggravated assault, the court sentenced Washington to 7 to 15 years of imprisonment. At Count 5, aggravated assault, the court sentenced Washington to 54 months to 10 years of imprisonment. The court ordered that Washington's sentences at Counts 1

and 4 would run consecutively, resulting in an aggregate sentence of 27 to 55 years of imprisonment.

Washington moved to reconsider or modify his sentence on February 14, 2022. The sentencing court denied Washington's motion the next day. Washington timely appealed. Washington and the sentencing court complied with Pennsylvania Rule of Appellate Procedure 1925.

Washington presents one issue for our review:

> Whether the lower court abused its discretion in imposing manifestly excessive and unreasonable sentences when the court failed to consider any significant mitigating factors, failed to apply and review all the necessary factors set forth in 42 Pa.C.S.A. § 9721(b) and 42 Pa.C.S.A. § 9781(c) and (d) or otherwise failed to set forth appropriate reasons for its decision other than those already considered in the definition of the offenses?

Washington's Brief at 6.

Because Washington challenges the discretionary aspects of sentencing, he must invoke this Court's jurisdiction by meeting four requirements:

> (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms.

**_Commonwealth v. Miller_**, 275 A.3d 530, 534 (Pa. Super. 2022) (citing

**_Commonwealth v. Leatherby_**, 116 A.3d 73, 83 (Pa. Super. 2015)). Here,

Washington filed a timely notice of appeal, preserved his issue, and included

a Rule 2119(f) statement in his brief. Furthermore, he raised a substantial question by claiming that the sentencing court imposed an excessive sentence and did not consider mitigating factors. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (citing *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014)). Therefore, Washington has invoked our jurisdiction over his claim.

Turning to the merits, we review a challenge to the sentencing court's exercise of discretion for an abuse of that discretion. *Commonwealth v. Aulisio*, 253 A.3d 338, 344 (Pa. Super. 2021).

> An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Id.* (quoting *Commonwealth v. Moury*, 992 A.2d 162, 169–170 (Pa. Super. 2010)).

In imposing sentence, a court is obligated to consider factors including "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," as well as the sentencing guidelines. 42 Pa.C.S.A.

- 4 -

§ 9721(b). A court that imposes a sentence outside the standard range of the guidelines must state its reasons for doing so on the record. *Id.*; *see Commonwealth v. Mrozik*, 213 A.3d 273, 278 (Pa. Super. 2019) (citing 204 Pa. Code § 303.13(c)).

When this Court reviews a sentence within the sentencing guidelines, we must affirm unless "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). For a sentence outside the guidelines, we must affirm unless "the sentence is unreasonable." *Id.* § 9781(c)(3). We have concluded that a sentence is not unreasonable where the sentencing court fully considered the factors before it, even if the defendant disputes the weight given to those factors. *Commonwealth v. Velez*, 273 A.3d 6, 12 (Pa. Super. 2022).

Here, Washington argues that the sentencing court abused its discretion by considering only the crime and impact on the victims, ignoring mitigating factors such as his clean prior record and rehabilitative needs. He also contends that the court's stated reasons for sentencing outside the guidelines for his aggravated assault conviction are inadequate. He disputes the sentencing court's perception of the "benefit" of his agreement to plead to murder of the third degree.

At sentencing, the court explained its reasoning as follows:

All right. The record shall reflect the Court has thoroughly reviewed the pre-sentence investigation report along with all the attachments to that report which included the letters from the various family members on behalf of [C.M.], as well as the other accompanying documents including a mental health evaluation

which was completed sometime last year, doesn't seem to have a date on it, but it was completed while [Washington] was in custody. I have also reviewed the letters which have been introduced as exhibits D-1 today, which were forwarded to me earlier, as well as the other photographs offered by the defense in exhibit D-2, and the photograph of [C.M.] as Commonwealth Exhibit 1.

[Every day,] sad cases come before this Court and today is no different. The tragedy suffered from both sides cannot be doubted. It is very likely that you did not have any ill will toward [C.M.], Mr. Washington. But you, of course, are here and she is not. A number of your family members expressed the concern that you had been characterized as a monster, either in the media, which frankly I don't ever recall seeing, or by other individuals. And you are not a monster, you are a living person who is here and [C.M.] is not. You will be able to have a relationship with your children. [C.M. will] not.

There does seem to be some misunderstanding by some individuals, perhaps on both sides of this case, about the level of malevolence that the law requires to sustain a conviction of murder in the third-degree. Just to clarify for both sides, for murder of the third-degree—I am reading from the standard jury instruction, 15.2502C—["]for murder of the third-degree a killing is with malice. If the perpetrator's actions show his or [her wanton] and willful disregard of, and unjustified, extremely high risk that his or her conduct would result in death or serious bodily injury to another.

["]In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove however, that the perpetrator took action while consciously, that is knowingly disregarding, the most serious risk he or she was creating. By his or her disregard of that risk, the perpetrator demonstrated his or her extreme indifference to the value of human life.["] The second alternative for paragraph three in that instruction reads, "For murder of the third-degree, a killing is with malice [if] the perpetrator acts with a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty indicating an unjustified disregard for the probability of death, or great bodily harm and an extreme indifference to the value of human life."

In large part Mr. Washington, you received the benefit of the plea bargain because your case was pled as murder of the third-degree, instead as originally charged as murder of the first-degree, where you could have faced life in prison without parole. Your actions by sparing [C.M.'s] family of a trial to go through the ordeal of hearing that testimony are captured within that plea bargain. The injuries that you inflicted on Ms. Garland and Mr. Welch were obviously not as serious, still demonstrated at the very least a recklessness on your part toward their safety. Twice in the PSI you were quoted as saying, "You'd be speaking to the Court to explain those circumstances on that date." I'm not sure I heard a complete explanation. But I understand that it was a confusing day for you. There may have been a variety of things that were affecting you on that date. And perhaps Ms. Garland was closest in saying the devil himself had some influence.

The facts, even though as described as Ms. Garland would indicate, that even if Mr. Welch had a gun, after he fled you continued to fire. Both wounding Ms. Garland and killing [C.M.] I will take into account the admirable role you played for members of your family and other individuals in society in fashioning this sentence, but I also have to address the clear record of the repeated shots that wounded [C.M.], ultimately taking her life, that you inflicted.

N.T., Sentencing, 2/4/22, at 105–109.

Upon review, we discern no abuse of discretion. The sentencing court's statements indicate that it considered Washington's evidence in mitigation and all required sentencing factors. Washington's sentence for murder of the third degree, while at the statutory maximum, was within the standard range. We affirm this sentence because we do not find the application of the guidelines to be clearly unreasonable. As to Washington's sentence for one count of aggravated assault, the sentencing court stated that it based its deviation from the standard range on the severe wounds that Washington caused by repeated gunshots. We conclude that this was an adequate basis to impose

a 7-to-15-year sentence, and the sentence is not unreasonable.  We therefore affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2023