J-S42008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                     :              PENNSYLVANIA
                                                     :

                v.                                                     :

JULIO GONZALEZ                              :

                  Appellant                   :      No. 559 MDA 2025

Appeal from the Judgment of Sentence Entered February 18, 2025
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000225-2020

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.:                 **FILED MARCH 24, 2026**

Appellant, Julio Gonzalez, appeals from the judgment of sentence entered on February 18, 2025, following his jury trial convictions for one count of attempted homicide, one count of discharging a firearm into an occupied structure, and two counts of aggravated assault.[1] We affirm.

Following a three-day trial in November 2024, a jury found Appellant guilty of the foregoing offenses, which arose from a drive-by shooting. **See** Trial Court Opinion, 6/13/2025, at 3. In sum, Appellant fired a handgun at two men on a front porch of a rowhouse residence located along Market Street in Union County, Pennsylvania. During the episode, bullets fired by Appellant

---

[1] 18 Pa.C.S.A. §§ 901(a)(criminal attempt), 2501(criminal homicide), 2707.1 (discharge of a firearm into an occupied structure), and 2702(a)(1) (aggravated assault), respectively. We note that in this case, there were two alleged victims. At the end of trial, the Commonwealth orally motioned to *nol pros* criminal charges related to one of the victims and the jury found Appellant not guilty of several other charged offenses.

entered two occupied homes and inflicted serious bodily injury on two male victims. On November 21, 2024, the jury convicted Appellant of the foregoing crimes. On February 3, 2025, the trial court sentenced Appellant to 20 to 40 years of incarceration for attempted homicide, 5½ to 20 years of incarceration for one count of aggravated assault, and 3½ to 7 years of incarceration for unlawful discharge of a firearm into an occupied structure. The trial court ordered these sentences to run consecutively to each other for an aggregate sentence of 29 to 67 years of incarceration. Furthermore, the trial court determined that Appellant's second conviction for aggravated assault merged with attempted murder for sentencing purposes; hence, no sentence was imposed for that conviction. Appellant filed a timely post-sentence motion on February 6, 2025. "On February 14, 2025, the [trial c]ourt issued a corrected sentencing [o]rder for the purpose of adding a period of statutorily required reentry supervision which had been inadvertently omitted from the original sentencing order." *Id.* at 1. Thereafter, while still maintaining jurisdiction, the trial court entered another corrected sentencing order on February 18, 2025.[2] On April 7, 2025, the trial court denied Appellant's post-sentence motion. This timely, counseled appeal resulted.[3]

---

[2] As such, this direct appeal lies from the second amended judgment of sentence. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010).

[3] On April 25, 2025, Appellant filed a timely notice of appeal. On May 13, 2025, the trial court directed Appellant to file a concise statement of errors
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issues for our review:

1. Whether the [trial] court erred in considering evidence not part of the record in determining the sentence to be imposed?

2. Whether the [trial] court erred in imposing consecutive sentences[, which culminated] in an unreasonable and excessive aggregate sentence?

3. Whether the [trial] court erred in failing to comply with 42 Pa.C.S.A. § 5947[, in granting immunity to two witnesses who were called to testify by the Commonwealth]?

Appellant's Brief at 6 (complete capitalization and suggested answers omitted).

Appellant's first two appellate issues implicate the discretionary aspects of sentencing. First, Appellant argues that the trial court relied upon impermissible factors, more specifically, "considered evidence that was not [of] record" when, prior to imposition of sentence, the trial judge stated:

[Y]ou put innocent women and children at risk to settle a beef. Again, it is a miracle no one died. That's all I'm going to say.

*Id.* at 14 (record citation omitted). Appellant claims that, at trial, there was no "mention of individuals, including children, being at the residence when the shots were allegedly fired by" Appellant. *Id.* at 15. Next, while conceding that he received standard-range sentences under the Pennsylvania Sentencing Guidelines for each conviction, Appellant argues that the imposition of consecutive sentences "resulted in an unreasonable and

complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 30, 2025, Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 13, 2025.

excessive sentence." *Id.* at 15. Appellant further argues that the trial court failed to consider mitigating factors such as his character, prior criminal record, age, or potential for rehabilitation as required under 42 Pa.C.S.A. § 9721. *Id.* at 16-17.

We have stated:

With respect to our standard of review, we have held that sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. Moreover, pursuant to statute, [an a]ppellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, [an a]ppellant must petition this Court for permission to appeal the discretionary aspects of his sentence.

As this Court has explained:

[t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708(E)]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

*Commonwealth v. Laughman*, 314 A.3d 569, 571 (Pa. Super. 2024).

Here, Appellant complied with the first three requirements. Appellant preserved both sentencing issues in a timely post-sentence motion, and Appellant filed a timely notice of appeal. On appeal, Appellant complied with Pa.R.A.P. 2119(f). *See* Appellant's Brief at 10-13. As such, we must decide

whether Appellant has presented a substantial question for each of the two sentencing issues presented.

This Court has recently reiterated:

"The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances." *Commonwealth v. Aulisio*, 253 A.3d 338, 344 (Pa. Super. 2021) (citation omitted). However, we have concluded that a defendant raised a substantial question where he averred "that the imposition of consecutive sentences violated the express provisions of the Sentencing Code and that the aggregate sentence of sixty years' incarceration was contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted); *see also Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) ("This Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citations omitted); [*Commonwealth v.*] *Smithton*, 631 A.2d [1053,] 1055 [(Pa. Super. 1993)] (concluding the appellant raised a substantial question where he asserted the trial court relied on an impermissible sentencing factor, *i.e.*, victim impact testimony from alleged victims [of crimes for] which the appellant was acquitted).

Based upon the foregoing, [an a]ppellant's challenge to the imposition of consecutive sentences as unduly excessive, combined with [a claim that the trial court either failed to adequately consider mitigating factors or wrongly considered impermissible factors], raises a substantial question. *See Aulisio*, 253 A.3d at 344; *Swope*, 123 A.3d at 340; *Smithton*, 631 A.2d at 1055[.]

*Commonwealth v. Jennings*, -- A.3d. --, 2026 WL 194389, at *20-21 (Pa. Super. 2026) (*en banc*) (original brackets omitted).  As such, we will review Appellant's sentencing claims.

First, Appellant contends that the trial court erred when it imposed sentence after noting, without record support, that women and children were

put at risk during the instant criminal episode. Appellant's Brief at 15. To support his contention, Appellant points out there was no "trial testimony" or "reference to women and children being inside the residence" in the presentence investigation report (PSI report) used at sentencing. *Id.* Instead, Appellant suggests that the "sentencing court [made] an unsubstantiated inference that [it] drew on its own." *Id.* Finally, Appellant suggests that the sentencing court improperly determined that Appellant's prior record score did not accurately reflect his past criminal conduct.[4] *Id.* at 11 and 16.

    In *Jennings*, **supra** we stated:

> the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual

---

[4] This contention, however, was neither presented in Appellant's concise statement pursuant to Rule 1925(b) nor addressed by the trial court in its Rule 1925(a) opinion. As such, Appellant waived this portion of his argument and we may not address it. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not include in the [concise s]tatement … are waived."); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants, and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

Sentencing Code Section 9721(b) directs trial courts to adhere to the general principle that the sentence imposed should call for total confinement consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The weighing of factors under Section 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weight of those factors. Further, in imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed.

We additionally recognize that

> [w]here pre-sentence reports exist, we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] constitutes the record and speaks for itself. Moreover, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed. This is particularly true, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Jennings*, at \*21-22 (original brackets, quotations, and case citations omitted).

Moreover,

prior to imposing sentence [a] sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.

Nevertheless, the discretion of a sentencing judge is not unfettered; a defendant has the right to minimal safeguards to ensure that the sentencing court does not rely on factually erroneous information, and any sentence predicated on such false assumptions is inimicable [sic] to the concept of due process.

*Commonwealth v. Melvin*, 172 A.3d 14, 25 (Pa. Super. 2017) (brackets in original; citation omitted); *see also Commonwealth v. Griffin*, 804 A.2d 1, 17 (Pa. Super. 2002)("[I]t [is] improper for a court to sentence pursuant to facts *dehors* the record in contradiction to the indictment."); *see also Commonwealth v. Cowan*, 418 A.2d 753, 753 (Pa. Super. 1980) ("If the court relies on improper considerations or information, ... new sentencing is required.").

Here, upon review of the record, we conclude that the trial court did not rely upon improper sentencing facts *dehors* the record or in contradiction to the indictment and, thus, Appellant's first appellate issue lacks merit. Initially, we note that Appellant was indicted and tried for discharging a firearm into an occupied structure. "A person commits an offense if he knowingly, intentionally or recklessly discharges a firearm from any location into an **occupied** structure." 18 Pa.C.S.A. § 2707.1(emphasis added). "Occupied

structure" is defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S.A. § 2707.1(d). At trial, Officer Dan Baumwell testified regarding his observations of the scene. *See* N.T., 11/19/2024, at 33-98. Officer Baumwell estimated that he responded to the shootings within three to four minutes after receiving an emergency telephone call. *Id.* at 35. Officer Baumwell testified that 1702 and 1704 West Market Street were both occupied when he arrived. *Id.* at 36-37. More specifically, when asked to name the specific individuals inside, Officer Baumwell testified as follows:

> 1702 [housed] Nelida Rosa-Cubero and her five-year-old niece. They were inside the residence at the time. [At] 1704, the two gentlemen [were] on the porch, the two victims on the porch, and then inside [were] Marilyn Grobes, and her two-year old daughter [and] another female, Cierrra Vorrath, was also inside the residence.

*Id.* at 36. Inside the residence at 1704 Market Street, the television was on and food was cooking in the kitchen and set out on a table, and, on the front porch there was "a little sippy cup, a water bottle that was empty, and a bunch of sidewalk chalk because the little girl had been out there just prior." *Id.* at 37. Hence, the trial court's statements at sentencing that "innocent women and children [were] at risk" and "it [was] a miracle no one died" were adequately supported by the record. Accordingly, Appellant's claim that the trial court sentenced him pursuant to facts *dehors* the record or in

contradiction to the indictment, is belied by the record. As such Appellant is not entitled to relief on his first issue presented.

Next, Appellant argues that the imposition of the consecutive sentences "resulted in an unreasonable and excessive sentence." Appellant's Brief at 15. As briefly mentioned above, although Appellant concedes that each sentence was imposed within the standard-range, he maintains that the consecutive nature of the sentences made his aggregate sentence unreasonable and excessive. *Id.* at 16. Appellant further argues that the trial court failed to consider his character, prior criminal record, age, or potential for rehabilitation as required under 42 Pa.C.S.A. § 9721. *Id.* at 16-17. He also contends that although the trial court had the benefit of a PSI report, "the only relevant portion of the [PSI report] that was reviewed by the [trial c]ourt on the record [was] the calculation of the sentencing guideline sheet." *Id.* at 17.

Initially, we presume that, because the trial court had the benefit of a PSI report, it was aware of relevant information regarding Appellant's character and weighed those considerations along with mitigating statutory factors. *See Jennings*, **supra**. Appellant does not cite authority, and we have not discovered any, for the proposition that the trial court must review the entire PSI report on the record at sentencing. Instead, we have stated that "[i]t would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." *Id.* Moreover, in this case, the trial court specifically stated that it "reviewed the information in the [PSI] report" and we presume it did so. N.T., 2/3/2025, at

6. Additionally, the Commonwealth entered evidence from the PSI report into the record prior to sentencing.[5] *Id.* at 18-19. Further, the trial court reviewed the sentencing guidelines, prior record score, offense gravity score, and merger with Appellant prior to sentencing. *Id.* at 3-8. Finally, the trial court gave Appellant his right to allocution. *Id.* at 12-18.

Regarding consecutive sentences, this Court has stated:

_____

[5] More specifically, the Commonwealth stated:

The PSI [report] indicates that at present [Appellant] is 28 years of age. He'll be 29 on June [10, 2025]. Between the ages of 20 and 24, [Appellant] had already committed one, two, three, four felonies.

\* \* \*

In 2018[,] receiving stolen property as a felony two, firearms not to be carried without a license as a felony three, and [an] escape charge as a felony three in 2020. So that many felonies in the span of four years, including one prior firearms violation. […T]he date of the offense of the escape conviction was three days prior to the offenses that form the basis for the charges in this case, June 1[,] 2020.

N.T., 2/3/2025, at 18-19. The Commonwealth also argued that: 1) the facts at trial showed that the crimes were premediated as an attempt to collect another person's drug debt; 2) both aggravated assault victims suffered permanent scars; and, 3) the victims inside the residences suffered trauma. *Id.* at 19. The trial court agreed opining, on the record, that Appellant's actions were "premediated" and not "in response to a threat" or "spontaneous." *Id*. at 21. The trial court noted that "most compelling was [a photograph presented at trial depicting] the front porch with all the kids' chalk drawings on them" and that "he put innocent women and children at risk to settle a beef." *Id*. at 21-22. As such, we reject Appellant's suggestion that the trial court failed to consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victims and on the community, and Appellant's rehabilitative needs pursuant to Section 9721.

Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement.

Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. [An a]ppellant is not entitled to a "volume discount" on his multiple convictions by the imposition of concurrent sentences.

*Commonwealth v. Brown*, 249 A.3d 1206, 1216 (Pa. Super. 2021) (internal citations and most quotations omitted). This Court has previously determined:

Long standing precedent recognizes that the Sentencing Code affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. When imposing a series of consecutive sentences, a sentencing court need not separately explain its reasoning for each sentence, or directly address its decision to have the sentences run consecutively. This Court has frequently held that a court satisfies its obligations under the Sentencing Code when it sets forth its general reasoning and consideration of the Section 9721(b) sentencing factors before imposing several consecutive sentences.

*Commonwealth v. Reese*, 285 A.3d 963, at *4 (Pa. Super. 2022) (non-precedential memorandum).[6]

In this case, as previously determined, the trial court had the benefit of a PSI report, explained its overall sentencing rationale, and properly considered the Section 9721(b) sentencing factors before imposing Appellant's sentences. The sentencing court was simply not required to separately explain

---

[6] We may cite non-precedential decisions filed after May 1, 2019 for persuasive value. *See* Pa.R.A.P. 126(b).

- 12 -

its reasoning for each sentence, or directly address its decision to have the sentences run consecutively. Moreover, Appellant is not entitled to "minimum possible" confinement or to a "volume discount" on his multiple convictions by the imposition of concurrent sentences. As such, we discern no abuse of discretion in imposing consecutive sentences. Accordingly, there is no merit to Appellant's second claim.

Finally, Appellant claims that the trial court failed to comply with 42 Pa.C.S.A. § 5947 by failing to conduct an on-the-record colloquy of two witnesses that were granted immunity. Appellant's Brief at 17-20. Specifically, Appellant challenges "the procedure utilized and employed" by the trial court "in granting" the immunity orders. Appellant does not contest the Commonwealth's request for an order granting immunity to its two witnesses. *Id.* at 20. In sum, Appellant contends:

> In the case at bar, the witnesses that were granted immunity, were never questioned by anyone on the witness stand prior to being granted immunity. The [Commonwealth] proposed calling [Mark] Parrilla and [Stephen] Reid. Counsel for both witnesses appeared and were involved in sidebar discussions with the [trial c]ourt where they advised the [c]ourt that it was their belief their clients would exercise their Fifth Amendment right against self-incrimination. The [trial c]ourt did not question the witnesses individually about whether they would exercise their right but merely suggested that the [trial c]ourt was advised by their respective counsel of their desire to exercise the privilege. No one asked questions of the two witnesses as to any facts. A boiler plate assertion of the privilege is normally not permitted. While a blanket privilege may be permitted when there is a complicity in the crime, other than saying these individuals were charged, there is nothing in the record to show complicity.

- 13 -

> Without establishing a foundation for the request for immunity, the District Attorney did in fact ask the [trial c]ourt for an immunity order.
>
> * * *
>
> The issue in this case is not the Commonwealth's request for the grant of immunity but rather, the procedure utilized and employed in the [trial c]ourt's granting of that order. There is nothing on the record to establish [the witnesses] actually had a Fifth Amendment privilege other than the representation of counsel.
>
> There was no questioning by the [Commonwealth] or prior defense counsel to determine whether the[grounds for asserting] privilege actually existed. There was no questioning as to whether any promises had been made in order to have them testify in this matter without the grant of immunity.

*Id.* at 19-20.

"The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney [] a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination." 42 Pa.S.C.A. § 5947(b).

"As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *In re R.R.*, 57 A.3d 134, 139 (Pa. Super. 2012) (citation omitted).

Our Supreme Court has

> held that the decision to seek a grant of immunity in any individual case rests within the judgment of the prosecutor. It is up to the executive branch of government to decide when and to whom immunity will be granted. Furthermore, a decision as to whether immunity should or should not be granted rests entirely within the judgment of the Attorney General or District Attorney.

- 14 -

***Commonwealth v. Mulholland***, 702 A.2d 1027, 1035 (Pa. 1997) (internal citation and quotations omitted).

> This Court has previously determined:
>
> It is clear that under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor. However, this right is qualified to the extent of existing testimonial privileges of witnesses, including the privilege against self-incrimination.
>
> There is no formula for determining when and how the Fifth Amendment privilege can be asserted (nor do we think one should be created).
>
> We are confident that trial courts can draw on their wealth of experience and fashion procedures appropriate to the practicalities of the case and that will allow the judge to make a sufficiently informed decision. We are likewise confident that lower courts will create a record sufficient to demonstrate the propriety of permitting or denying the privilege at the same time as preserving any Fifth Amendment right.
>
> *            *            *
>
> We acknowledge that a blanket privilege generally is not permitted. Alternatively, a witness should not be placed on the stand for the purpose of having him exercise his Fifth Amendment privilege before the jury.
>
> However, for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency.

***Commonwealth v. Doolin***, 24 A.3d 998, 1001–1002 (Pa. Super. 2011) (internal citations, quotations, and original brackets omitted; emphasis in original).

- 15 -

Here, the trial court explained that it would colloquy the witnesses to determine whether they were individually willing to testify. N.T., 11/18/2024, at 167. If the witnesses invoked their right to avoid testimony under the Fifth Amendment, the Commonwealth was prepared to offer them immunity. *Id.* Later at trial, during an on-the-record sidebar, respective counsel for these two witnesses told the court that their clients were advised to exercise their Fifth Amendment rights against self-incrimination, unless granted immunity. *See id.* at 210 ("Given the nature of the case and the charges that are still pending, I would be advising my client[, Stephen Reid,] to exercise his Fifth Amendment right not to incriminate himself which I imagine if the Commonwealth still wants to call him, he's going to make a motion to get derivative use immunity and get a court order ordering him to testify. And, at that point I don't know what he's going to do."); *see also id.* at 210-211 ("My client[, Mark Parrilla,] he's been advised to plead the Fifth. My understanding is the Commonwealth is willing to offer him immunity. My understanding is that my client will still decline to testify."). Both attorneys advised their client witnesses "on the consequences of refusing to testify in the event an order [was] entered compelling them to do so." *Id.* at 212. The trial court then colloquied each witness at an on-the-record sidebar outside the presence of the jury. *Id.* at 217. Contrary to Appellant's contention on appeal, both men confirmed that they wished to assert their Fifth Amendment privilege. *Id.* at 218-219. The Commonwealth offered immunity under Section 5947. *Id.* at 219. The trial court explained to the witnesses that "if

I grant that immunity order and you were called as a witness, you may not refuse to testify based on the privilege against self-incrimination" and that the testimony could not be used in a criminal case related to the charges in this matter. *Id.* at 220. The trial court explained to both witnesses that, if compelled to testify under an immunity order, further refusal to testify could result in being held in civil or criminal contempt of court. *Id.* at 221. Both witnesses testified that they understood all of the court's instructions. *Id.* at 220-222. Thereafter, the trial court granted the Commonwealth's request for immunity and both witnesses ultimately testified at Appellant's trial.

Upon review of the record, we discern no error of law by the trial court in granting immunity under Section 5947. Initially, we note that decisions regarding when and to whom immunity shall be extended rest entirely with the Commonwealth. Moreover, our Supreme Court has noted that there is no formula or structured procedure for determining when and how the Fifth Amendment privilege can be asserted. Instead, trial courts may draw on their wealth of experience to fashion procedures appropriate to the practicalities of the case and make a sufficiently informed decision regarding the grant or denial of immunity. In this case, the trial court created a record sufficient to demonstrate that the Commonwealth validly invoked Section 5947 to extend immunity to its two witnesses. The record showed that the prosecutor requested immunity for the witnesses based upon his judgment that the witnesses were likely to invoke their Fifth Amendment privilege and that their testimony was needed at Appellant's trial to further the public interest. *See*

42 Pa.C.S.A. § 5947.  This was all that was needed to properly invoke Section 5947.  Moreover, as set forth above, the record belies Appellant's claim that there was no record evidence to establish the witnesses actually asserted a Fifth Amendment privilege and that the trial court only granted immunity on counsels' representations.  The trial court specifically colloquied each witness on the record and they each asserted the privilege for themselves.  For all of the foregoing reasons, there is no merit to Appellant's last appellate claim.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/24/2026